Linda J. Thayer (SBN 195,115)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P
3300 Hillview Avenue
Palo Alto, California 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666
linda.thayer@finnegan.com

Roger D. Taylor (*Admitted Pro Hac Vice*)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P
303 Peachtree Street, N.E.
Atlanta, GA 30308-3263
Telephone: (404) 653-6400
Facsimile: (404) 653-6444
roger.taylor@finnegan.com

Attorneys for Plaintiff
MARVELL SEMICONDUCTOR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MARVELL SEMICONDUCTOR, INC.,

Plaintiff,

v.

WI-LAN, INC.,

Defendant.

CASE NO. C07-05626 SI

**MARVELL SEMICONDUCTOR, INC.'S OPPOSITION TO WI-LAN, INC.'S MOTION TO DISMISS MARVELL SEMICONDUCTOR, INC.'S SUIT FOR DECLARATORY RELIEF**

**Hearing Date: June 20, 2008**
**Location: Courtroom 10, 19th Fl.**
**Time: 9:00 a.m.**

**[REDACTED VERSION FOR PUBLIC VIEWING]**

# I. INTRODUCTION

Marvell filed this action to obtain a declaration that its communications processor integrated circuit family products do not infringe the Wi-LAN patents identified in its Complaint. Marvell took this action, as explained in detail below, because Wi-LAN's statements that Wi-LAN believed Marvell's products infringed its patents. Marvell sought, and still seeks, clarity that all of its products do not infringe the Wi-LAN patents.

Defendant Wi-LAN, Inc. ("Wi-LAN") now admits in its Motion to Dismiss that Marvell Semiconductor Inc.'s ("Marvell") PXA90x product family, the product which was the original focus of the infringement charge from Wi-LAN, is not implicated by the Wi-LAN patents-in-suit. Motion at p. 2 ("PXA90x chip set family [is] not implicated by its patents.") However, Marvell's Complaint was not limited to that particular chip set, and Marvell intended to seek, via this litigation, a declaration that none of its communication processor products, or future derivatives thereof, infringe.

Wi-LAN, in particular, has not given Marvell assurances that it will not sue based on communication processor products that Marvell has recently released, known as the Marvell Tavor family of chipsets. Marvell has invested significant resources developing these products, and they have been identified as the chipsets used in the latest generation of Research In Motion's Blackberry PDA device, named Bold. Without an assurance from Wi-LAN that it will not allege that these products infringe, Marvell will be in the uncomfortable position of continuing to market these and other new products and risking an injunction and damages, or abandoning its plans to bring these products to market. Neither alternative is a welcome or fair outcome for Marvell. Therefore, Marvell respectfully requests that this Court deny Wi-LAN's Motion to Dismiss.

## II. STATEMENT OF FACTS

### A. Correspondence Between Marvell and Wi-LAN Puts Marvell Under a Dark Cloud of Infringement as to its Communications Processor Products, and Marvell Asks for Necessary Declarations from This Court To Lift this Cloud so that It Can Do Business

On or about December 15, 2006, Mr. William Middleton, Vice President, General Counsel & Secretary of Wi-LAN, sent an email to Mr. Matthew Gloss, Marvell's former General Counsel, identifying U.S. Patent No. RE37,802 ("the '802 patent"), U.S. Patent no. 6,192,068 ("The '068 patent"), and U.S. Patent No. 6,320,897 ("the '897 patent") (collectively, "the Wi-LAN patents") and asserting that the Wi-LAN patents covered Marvell's PXA90x communications processor integrated circuit family. Complaint, ¶ 11.

On or about December 21, 2006, Mr. Middleton reiterated in a letter to Mr. Gloss Wi-LAN's assertion that the manufacture and sale of a number of identified Marvell products infringed the Wi-LAN patents and the products "require a license" to these patents. Complaint, ¶ 12. Although Marvell asked in responsive correspondence for a more detailed explanation of the charges of infringement, no additional information was provided by Wi-LAN.

In response to a follow-up email from Barry Shelton, outside counsel for Marvell, which again asked for more information, Mr. Middleton replied on or about August 8, 2007, that Wi-LAN would provide additional information, including the requested infringement claim charts. However, Wi-LAN never provided any infringement charts to Marvell. Complaint, ¶ 13.

Instead, on October 31, 2007, Wi-LAN filed two complaints in the Eastern District of Texas, Marshall Division, (Civil Action Nos. 2-07CV-473 and 2-07CV-474, collectively "the Texas Actions"), each accusing Marvell of infringing the '802 patent and U.S. Patent No. 5,282, 222 ("the '222 patent) by "making, using, offering for sale, importing, and/or selling integrated circuit and/or circuit boards used and/or designed for use" in accused products manufactured by other defendants. The Complaints allege that Marvell, and a large number of other co-defendants, are infringing those patents by making and selling products compatible with a technical standard issued by the Institute of Electrical and Electronic Engineers (the IEEE) identified as 802.11.

The IEEE 802.11 standards bodies do not govern cellular telephone networks, but instead define completely different technical standards; namely, standards for local area networks that are used to interconnect computers or other communication devices. Accordingly, on November 5, 2007, Marvell filed the present suit. Marvell seeks declarations from this Court that none of the communications processor integrated circuit family of products that were the subject of the aforementioned correspondence with Wi-LAN infringed the Wi-LAN patents, that those patents were invalid, and that they were unenforceable due to misuse. Marvell cited Wi-LAN's assertions that the Wi-LAN patents covered Marvell's communications processor integrated circuit family and Wi-LAN's demands that Marvell license the Wi-LAN patents as a basis for declaratory judgment jurisdiction.

**B. Great Investment has been Plowed Into the Marvell Release 5 Products, Some of Which are Currently Shipping and are Clearly Put at Risk by Wi-LAN**

Marvell designs and makes a wide variety of products to be used by customers in cellular telephone network products. Declaration of Shyam Krishamurthy ("Krishnamurthy Declaration"), ¶ 3. For interoperability, the Marvell products adhere to international standards, such as those promulgated by the 3rd Generation Partnership Project (3GPP), a collaboration between groups of telecommunications associations that issues globally applicable third generation (3G) mobile phone system specifications within the scope of the International Mobile Telecommunications-2000 project of the International Telecommunication Union (ITU). *Id.* 3GPP specifications are based on evolved Global System for Mobile Communications (GSM) specifications. *Id.*

Versions of the 3GPP standard are called "Releases". Krishnamurthy Declaration, ¶ 4. Release 99 specified the first Universal Mobile Telecommunications System (UMTS) 3G networks, incorporating a Code Division Multiple Access (CDMA) air interface. *Id.* The standard was finalized and released in early 2000. *Id.*

Release 5 was released in early 2002. Krishnamurthy Declaration, ¶ 5. Release 5 builds on the architecture described in Release 99, and includes additional features, such as IP Multimedia Subsystem (IMS), an architectural framework for delivering internet protocol (IP) multimedia to

mobile users and High-Speed Downlink Packet Access (HSDPA), which allows networks based on Universal Mobile Telecommunications System (UMTS) to have higher data transfer speeds and capacity from a network node, or cellular base station, to a mobile unit such as a user's cellular phone. *Id.* For example, in products based on Release 99, the maximum data rate from a base station to a mobile unit is 364 kilobits per second (kbps). *Id.* HSDPA deployments supports data rates of 1.8, 3.6, 7.2 and 14.4 megabits per second (Mbps) from the base station to a mobile unit. Further speed increases are planned for the near future. *Id.*

Marvell's PXA90x communications processor supports GSM, GPRS, and WCDMA mobile standards, such as 3GPP. Krishnamurthy Declaration, ¶ 7. Marvell is currently selling products based on Release 99. *Id.*

Marvell has designed and developed chipsets that comply with Release 5. Krishnamurthy Declaration, ¶ 8. [REDACTED] Krishnamurthy Declaration, ¶ 10. [REDACTED] Krishnamurthy Declaration, ¶ 11. The design of the Tavor family product is complete, and it is on the verge of mass production and inclusion in various consumer end products. *Id.* Krishnamurthy Declaration, ¶ 8. As specified in Release 5, these products will support HSDPA base station to mobile unit data rates greater than 364 kbs. *Id.*

[REDACTED] Krishnamurthy Declaration, ¶ 9. [REDACTED] Krishnamurthy Declaration, ¶ 11.

### C. Wi-LAN Has Not Granted Marvell a Covenant Not To Sue On Marvell's Non-infringing Release 5 Products

In the letter dated March 28, 2008, Wi-LAN covenants not to sue Marvell and its customers for patent infringement of any claim of the Wi-LAN patents "based on Marvell's PXA90x family of chipsets as it exists today or has existed in the past." *Declaration of Kevin L. Burgess*, Exhibit A (Dkt. No. 34-3). However, Wi-LAN has not given an equally broad covenant not to sue on Marvell Release 5 products which are either in, or about to enter, the market, such as the Tavor family of chipsets.

## III. ARGUMENT

### A. The Legal Standard this Court Should Follow is Clearly Set Forth by the Supreme Court in *Medimmune v. Genentech*

The Supreme Court recently re-examined Article III's case or controversy requirement as it relates to the Declaratory Judgment Act and held that a party need not expose itself to substantial financial penalty and loss of business before it is allowed to seek a declaration of its actively contested legal rights under Article III of the Constitution. In *Medimmune v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007), the Supreme Court confirmed that the "actual controversy" requirement of the Declaratory Judgment Act demands only "that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts'." *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)) In other words, a party need only "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)). As the Supreme Court noted, "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity." *Id.* at 772. (quotation marks omitted).

Since the Supreme Court decided *Medimmune* in January 2007, the Federal Circuit has acknowledged that *Medimmune* "represents a rejection of [the Federal Circuit's] reasonable

apprehension of suit test." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007). In *SanDisk*, decided March 26, 2007, the Federal Circuit explained that:

> Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do. ... We hold only that where a patentee asserts rights under a patent based on certain identified ongoing <u>or planned activity</u> of another party, and where the party contends that it has the right to engage in the accused activity without a license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." (Emphasis added.)

*Id.* The court looked to the defendant's conduct in its totality, rather than focusing on whether the conduct had created a reasonable apprehension of suit, to find that the lower court had improperly dismissed the matter for lack of jurisdiction. *Id.* The court explained that SanDisk need not "'bet the farm,' so to speak, and risk a suit for infringement by ... continuing the [allegedly infringing] activity before seeking a declaration of its legal rights." *Id.* at 1382.

Just this week, the Federal Circuit affirmed that declaratory judgment jurisdiction was proper and a sufficient case or controversy existed with respect to an accused infringer's "future products," even though the designs had not yet been commercially implemented. In *Cat Tech LLC v. Tubemaster, Inc.*, 2007-1443 (Fed. Cir. May 28, 2008), the Federal Circuit found that the accused infringer's design was "substantially fixed" and sufficiently ready for market, thereby meeting the "reality" requirement, even though its designs would need to be customized at each customer's site, and the accused infringer had made no disclosures to customers or potential customers and not realized any sales. *Id.* at 17. Following the wisdom of *Medimmune*, the Court considered the totality of the circumstances, determined that the controversy between the parties was actual and justiciable, thereby preventing the accused infringer from having to make the "in terrorem choice" between growing potential liability and ceasing development activity. *Id.* at 28.

The Federal Circuit has also recognized that the reasoning used in its earlier *Super Sack* decision was no longer valid. In *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345-46 (Fed. Cir. 2007), decided by the Federal Circuit a few months after *Sandisk*, the court clarified that

its holding in *Super Sack Mfg. Corp v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Circ. 1995) was based on the "old" law and that it had found Super Sack's covenant not to sue Chase for infringement based on products "currently manufactured and sold by Chase," to be sufficient to divest the court of jurisdiction, because Chase was not engaged in any "present activity" that placed it at risk of an infringement suit, and "Chase did not claim it was planning to make any new infringing product." In *Benitec*, the court further indicated that it found the covenant in *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852 (Fed. Cir. 1999)—which likewise did not include future products—also sufficient under the old standard because *Amana* had not articulated any "present activity" but rather only future activities at "some indefinite point in the future." *Id.* The court noted that both *Amana* and *Super Sack* were decided under the "disapproved 'reasonable apprehension of imminent suit' test" and explicitly declined to follow them, choosing instead to base its decision strictly on the framework of *Medimmune*. *Id.* at 1346.

### B. Marvell's Present Activities to Develop, Market and Sell its Release 5 Products are Substantial, Definite and Concrete, and Not Covered by Wi-LAN's Covenant Not to Sue

#### 1. Marvell's Release 5 Products Are Not Included in Wi-LAN's Narrowly Tailored and Inadequate Covenant

The covenant not to sue provided by Wi-LAN does not fully resolve the substantial controversy between Wi-LAN and Marvell. The covenant not to sue is limited to the "PXA90x family of chipsets as it exists today or has existed in the past." In other words, Wi-LAN's covenant not to sue does not extend to any Marvell products that have been modified–even in slight, inconsequential ways–since March 28, 2008, or to any of the Tavor family of chipsets which Marvell has released since March 28, 2008, or will soon release.

Wi-LAN fashions its covenant not to sue after the covenant at issue before this court in *Crossbow Tech., Inc. v. YH Tech.*, No. C 03-4360 SI, 2007 U.S. Dist. LEXIS 65646, at *18 (N.D. Ca. Aug. 21, 2007) ("Crossbow Tech. II") (Illston, J.), and then argues in a conclusory fashion that the outcome should be the same here. *Crossbow II* may be easily distinguished from the case at hand. In *Crossbow*, this court noted that the defendant only had "plans to engage in potentially

infringing activities because his career is in the general field of the '622 patent." *Id.* at 1121. The court noted that, like the defendant in *Benitec*, the defendant had not taken any concrete steps toward potentially infringing activities not covered by the covenant, and so therefore defendants claims were purely hypothetical and too fleeting on which to find declaratory judgment jurisdiction.

[REDACTED] Krishnamurthy Declaration, ¶ 10. Without freedom to operate free of threat by the Wi-LAN patents, Marvell's activities may be a basis for Wi-LAN to continue to allege infringement, and thus try to interfere with its business. In addition to its products already on the market, Marvell and its customers also have other "future" products that are closer to market than those of the accused infringer in *Cat Tech*, which had not yet even disclosed its designed configurations to customers or potential customers. *Cat Tech*, slip op. at 17. By contrast, Marvell is currently working with its customers to bring these products to market and will do so shortly. Krishnamurthy Declaration, ¶ 9. It would be inefficient and make no sense to require that Marvell and its customers actually manufacture and sell products—and incur substantial cost to do so—before Marvell's claims were heard. *See Cat Tech*, 2007-1443 at 29 (citing *Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 90 (2nd Cir. 1963) ("[I]t would be economically wasteful to require a plaintiff to embark on an actual program of manufacture, use or sale which may turn out to be [infringing]."). This controversy is already sufficiently "immediate" and "real" to support the continued jurisdiction of the Court over this matter.

**2. Marvell's Complaint Presents a Real Controversy Because its Investment in the Release 5 Products is At Substantial Risk to Marvell and to Its Customers Who Are Shipping or About to Ship**

Marvell's Complaint, and the relief it sought there, were not limited to the PXA90x family of chipsets. Marvell sought a judgment that none of its products were implicated by the patents at issue. Complaint at Paragraphs A & B, Prayer For Relief. The design of these products is not fleeting or hypothetical, but based on the 3GPP standard Release 5, which has been fixed and publicly available for years.

Wi-LAN has not provided a covenant not to sue on Marvell products that comply with Release 5 of the 3GPP standard covering the Tavor family of chipsets. This puts Marvell in the uncomfortable position today of either proceeding ahead with its plans to bring the already-developed product to market and risk an injunction and further liability or financial risk or abandon its planned activities to bring a non-infringing product to market. As the *Sandisk and Cat Tech* courts recognized, Marvell should not have to make this choice, and this court should exercise its discretion to hear this dispute now.

Several key facts distinguish this case from *Benitec*. First, contrary to the Declaratory Judgment plaintiff in *Benitec*, Marvell has disputed products on the market now. Nucleonics was years away from delivering any potentially infringing product to the public. In declarations submitted to the court, Nucleonics stated only that it "wishes to expand" its efforts into the purportedly infringing subject matter. *Benitec*, 495 F.3d at 1348. Nucleonics had not yet filed a New Drug Application ("NDA") which the court acknowledged would take years to get through the FDA. *Id.* at 1346.

Second, Nucleonics had not yet produced any definite offer which any customer would accept. *Id.* at 1348. By contrast, Marvell's Release 5 chipsets are in the market, and will soon be included in consumer devices. Krishnamurthy Declaration, ¶ 8. [REDACTED] *Id.*, ¶11. [REDACTED] *Id.*

Third, Nucleonics had not offered any evidence that it has spent any money on developing the potentially infringing product; where [REDACTED] *Id.*, ¶ 10.

/

/

/

## IV. CONCLUSION

Marvell has products that are not covered by the covenant not to sue provided by Wi-LAN, including the Tavor family of products. Those products support the court's jurisdiction, because they are at the core of a very real case and controversy between the parties. For these reasons, Wi-LAN's motion to dismiss should be denied.

Respectfully submitted,

Dated: May 30, 2008 By: /s/

Linda J. Thayer
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 849-6600
Attorneys for Plaintiff
MARVELL SEMICONDUCTOR, INC.